# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

STARSURGICAL INC.,
    Plaintiff,

v.                                             Case No. 10-CV-01156

APERTA, LLC, et al.,
    Defendants,

DIETMAR H. WITTMANN,
    Defendant / Third-Party Plaintiff,

v.

MICHAEL DEUTSCH,
    Third-Party Defendant.

## DECISION AND ORDER

In 1987, Dr. Dietmar H. Wittmann, an employee of the Medical College of Wisconsin ("MCW"), invented a patch for use in a surgical procedure known in the industry as staged abdominal repair ("STAR"). Wittmann then assigned his rights in the patch to the college's research foundation, which in turn granted a license to Michael Deutsch to manufacture and sell the patch. In 2000, Wittmann and Deutsch went into business together and created Starsurgical, Inc., a company in which Deutsch held 51% of the shares and Wittmann held 49%. The company registered STARSURGICAL as a trademark, and together the two partners agreed to begin marketing the patch under the trademark WITTMANN PATCH. The two then had a falling out, and, in 2009, Wittmann formed Aperta, LLC and Novomedicus, Inc., which began marketing a slightly different version of the patch using the same WITTMANN PATCH trademark. Plaintiff Starsurgical then

brought this lawsuit alleging trademark infringement against defendants Wittmann, Aperta, Novomedicus, and Novomedicus' president, Paul Van Deventer. Plaintiff moved for a preliminary injunction enjoining defendants from using the WITTMANN PATCH trademark or any similar mark, and, on May 24, 2011, I granted plaintiff's motion. Following entry of that injunction, defendants began using the trademark STAR PATCH. Plaintiff now moves for a second preliminary injunction on the ground that defendants' new trademark violates § 32 and § 43(a) of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), by infringing plaintiff's STARSURGICAL and WITTMANN PATCH trademarks.

To justify a preliminary injunction, plaintiff must prove that "it is reasonably likely to succeed on the merits, it is suffering irreparable harm that outweighs any harm the nonmoving party will suffer if the injunction is granted, there is no adequate remedy at law, and an injunction would not harm the public interest." Christian Legal Soc'y v. Walker, 453 F.3d 853, 859 (7th Cir. 2006). To demonstrate a likelihood of success on its infringement claim, plaintiff must establish that it owns a protectable trademark and a "likelihood of confusion" exists between the marks or products of the parties. Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc., 128 F.3d 1111, 1115 (7th Cir. 1997). When granting plaintiff's first motion for a preliminary injunction, I concluded that plaintiff is likely to succeed in proving that it owns the WITTMANN PATCH trademark, and defendants do not dispute that plaintiff owns the STARSURGICAL trademark. Instead, defendants contend that there is no likelihood of confusion between the parties' marks. In assessing whether there is a likelihood of consumer confusion, I consider seven factors: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree and care likely to be exercised by consumers;

2

(5) the strength of the plaintiff's mark; (6) any actual confusion; and (7) the intent of the defendants to "palm off" their product as that of another. Autozone, Inc. v. Strick, 543 F.3d 923, 929 (7th Cir. 2008).

Defendant characterizes STARSURGICAL as a trade name rather than a trademark, but for purposes of plaintiff's application for a preliminary injunction the distinction is irrelevant. The Lanham Act defines "trademark" broadly to include a name used by a person "to identify and distinguish his or her goods . . . and to indicate the source of the goods." 15 U.S.C. § 1127. Further, both trademarks and trade names are protected against infringement under the same principles. American Steel Foundries v. Robertson, 269 U.S. 372, 380 (1926); see also 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 9:1 (4th ed. 2011).

In order to analyze whether consumers are likely to confuse defendants' mark with plaintiff's, I must decide whether to consider STARSURGICAL and WITTMANN PATCH together. Under the conjoint use rule, I may consider two trademarks together if: 1) the marks have been and are being used together on a single product, and 2) the marks have been used conjointly to such an extent that, in the mind of the consumer, both are indicative of the origin of the product. Schering-Plough Healthcare Products, Inc. v. Ing-Jing Huang, 84 U.S.P.Q.2d (BNA) 1323 (T.T.A.B. 2007). The STARSURGICAL and WITTMANN PATCH marks appear together on plaintiff's product packaging, advertisements, website, business cards, and in journal articles discussing plaintiff's product. STARSURGICAL appears on the front of plaintiff's product box, prominently placed immediately above WITTMANN PATCH, and STARSURGICAL is featured in large

3

print at the bottom of many of plaintiff's ads. Thus, I conclude that plaintiff's conjoint use of the two marks is sufficient to justify considering them together.

Analyzing these two marks together, I find that plaintiff will likely be able to establish a likelihood of consumer confusion. The first factor in the likelihood of confusion test, similarity in appearance and suggestion, favors plaintiff. STARSURGICAL and WITTMANN PATCH are visually and aurally similar to STAR PATCH. The dominant word in defendants' mark, "star," is also the dominant word in STARSURGICAL, and both marks describe the product as a "patch." Defendants argue that the present case is analogous to Simoniz Co. v. Hysan Prods. Co., 142 U.S.P.O. (BNA) 377 (T.T.A.B. 1964), in which two marks were found not to be confusingly similar. However, the marks at issue in the present case are much more similar than those in Simoniz because both contain the distinctive and potent words star and patch.

The second and third factors in the likelihood of confusion test also weigh in plaintiff's favor. The surgical patches sold by defendant are almost identical to those sold by plaintiff. When marks appear on virtually identical goods, the degree of similarity necessary to support a finding of a likelihood of confusion declines. Century 21 Real Estate Corp. v. Century Life of America, 970 F.2d 874, 877 (Fed. Cir. 1992). Further, defendants sell their products to the same group of customers as plaintiff and use the same channels of trade.

The fourth factor supports defendants. Consumers are likely to exercise a high degree of care when purchasing these patches because each patch costs over $1000. The fifth factor also favors defendants because the words star and patch are weak, descriptive words, and they are commonly used in trademarks for medical devices.

4

However, even a trademark that uses weak, descriptive words is entitled to protection to the extent necessary to prevent confusion as to its source. Matsushita Elec. Indus. Co. v. Nat'l Steel Constr. Co., 442 F.2d 1383, 1385 (C.C.P.A. 1971) ("National" is a weak mark, but it is still protected against use of the same mark on similar goods). Defendants are not merely using the words at issue to describe their goods, they are creating a competing trademark.

The sixth factor, actual confusion, favors plaintiff. Plaintiff presents some evidence indicating that, since defendant began using the STAR PATCH mark, customers at trade shows have inquired about the relationship between Starsurgical and defendants, and one customer ordered a "Wittmann Star Patch" from defendants.

In determining whether plaintiff is likely to succeed on the merits of its infringement claim, I also note that a competitor that has already been enjoined once "should thereafter be required to keep a safe distance away from the margin line—even if that requirement involves a handicap as compared with those who have not disqualified themselves." Independent Nail & Packaging Co. v. Stronghold Screw Prods., 215 F.2d 434, 436–37 (7th Cir. 1954) (quoting Broderick & Bascom Rope Co. v. Manoff, 41 F.2d 353, 354 (6th Cir. 1930)). Here, defendants did not keep a safe distance from plaintiff's marks.

Thus, weighing the relevant factors, I find that plaintiff is likely to succeed on the merits of its claim. I also conclude that if I deny relief plaintiff is likely to suffer irreparable harm for which it has no adequate remedy at law. Injuries arising from trademark infringement are presumed irreparable because the plaintiff's reputation is being imperiled by the acts of another. Re/Max North Cent., Inc. v. Cook, 272 F.3d 424, 432 (7th Cir. 2001). Such injuries are not remediable at law because "it is virtually impossible to

5

ascertain the precise economic consequences of intangible harms, such as damage to reputation and loss of goodwill, caused by such violations." Abbott Labs. v. Mead Johnson & Co., 971 F.2d 6, 16 (7th Cir. 1992).

I must then balance the benefit to plaintiff against the potential harm an injunction would do to defendants. If I grant an injunction, defendants will need to adopt a new trademark and change their promotional materials. If it turns out that they were wrongfully enjoined, they will have needlessly risked losing sales opportunities and the goodwill of their customers. However, the defendant companies are new and have sold only 70 patches, only about 40 of those under the STAR PATCH trademark. Plaintiff, on the other hand, has been using its trademarks for over 10 years, and an injunction would serve the public interest by preventing consumer confusion in the marketplace. Promatek Indus., Ltd. v. Equitrac Corp., 300 F.3d 808, 813–14 (7th Cir. 2002). Thus, I believe the benefit of an injunction is greater than the harm it will cause.

Pursuant to Fed.R.Civ.P. 65(c), plaintiff must post security with the court in order to cover the costs and damages to defendant in the event that defendant has been wrongfully enjoined. Van Deventer avers that it will cost approximately $35,000 to change all of defendants' promotional materials a second time while the action is pending. Therefore, I will order plaintiff to post a bond in that amount.

Finally, the party interested in maintaining the confidentiality of the documents submitted in connection with defendant's second motion to seal documents must establish good cause for withholding the documents from the public record. Courts are public institutions and the simple assertion that the parties have agreed to keep certain

6

documents confidential is not sufficient to overcome the presumption of openness. See Cnty. Materials Corp. v. Allan Block Corp., 502 F.3d 730, 740 (7th Cir. 2007).

**THEREFORE, IT IS ORDERED** that plaintiff's second motion for preliminary injunction [Docket #79] is **GRANTED**. Defendants, their agents or anyone else working with or on behalf of the defendants are preliminarily enjoined and restrained, directly or indirectly, from using the STAR PATCH trademark or any other trademarks similar to the combination of plaintiff's STARSURGICAL and WITTMANN PATCH trademarks. This preliminary injunction shall remain in effect until further order of the court.

**IT IS FURTHER ORDERED** that plaintiff shall give security by depositing with the court an undertaking in the form of a bond, check or cash in the sum of $35,000 within seven days of the date of this order.

**IT IS FURTHER ORDERED** that the party seeking to preserve confidentiality shall file with the court proof of good cause for withholding from the public record the documents addressed in defendant's second motion to seal documents [Docket #84] within 10 days of this order.

Dated at Milwaukee, Wisconsin, this 8th day of December 2011.

s/_____
LYNN ADELMAN
District Judge

7

Case 2:10-cv-01156-LA   Filed 12/08/11   Page 7 of 7   Document 95